UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO VERDUZCO,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA FOODS PACKAGED FOODS, LLC,<br><br>Defendant. | No. 1:18-cv-01681-DAD-SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 8) |

**INTRODUCTION**

Plaintiff Arturo Verduzco filed this lawsuit against defendant Conagra Foods Packaged Foods, LLC after plaintiff was allegedly subject to workplace discrimination by defendant's employees. (Doc. No. 1.) In his complaint, plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Pay Act ("EPA"), and intentional infliction of emotional distress ("IIED") under California law. (*Id.*) Currently pending before the court is defendant's motion to dismiss the complaint for failure to state a claim and for lack of subject-matter jurisdiction. (Doc. No. 8.) The court heard oral argument on the motion to dismiss on April 2, 2019. (Doc. No. 19.) Plaintiff appeared at the hearing on his own behalf and attorney Kate Juvinall appeared telephonically on behalf of the defendants. The court has considered the parties' briefs and oral argument, and for the reasons explained below, defendant's motion to

1

dismiss will be granted in its entirety with plaintiff being granted leave to file an amended complaint.

## FACTUAL BACKGROUND

In his complaint, plaintiff alleges as follows. He was hired by defendant at its facility in Oakdale, California on August 23, 1990. (Doc. No. 1 at ¶ 14.) Plaintiff still works for defendant and his current job title is Mechanic Helper. (*Id.* at ¶ 15.) Plaintiff identifies his gender as male and his race/national origin as Mexican. (*Id.* at ¶ 16; *see also id.* at 25.) Since 2011 plaintiff has been subject to workplace discrimination based on his gender and his race/national origin. (*Id.* at ¶ 16.)

Plaintiff has held a number of job positions with defendant over the years. In 2011 and 2012, defendant refused to train him for two of those positions. Around August 2011, plaintiff's job title was Bin Filler. (*Id.* at ¶ 21.) Defendant failed to provide him with adequate training for this position. (*Id.*) Even after complaining to the human resources manager ("the HR Manager") and his union representative ("the Union"), plaintiff continued to suffer workplace discrimination, although the complaint does not describe the discrimination that he allegedly suffered. (*Id.*) Around March 2012, plaintiff's job title was Retort Operator. (*Id.* at ¶ 22.) Defendant, however, failed to provide him with adequate training for this position. (*Id.*) Even after complaining to the HR Manager and the Union, plaintiff continued to suffer workplace discrimination, although, again, the complaint does not describe the discrimination that he allegedly suffered. (*Id.*)

On or around August 5, 2015, plaintiff was promoted to Quality Assurance Supervisor ("QA Supervisor"). (*Id.* at ¶¶ 23, 24.) Like with his prior positions, defendant failed to provide him with adequate training as a QA Supervisor. (*Id.* at ¶ 23.) Plaintiff's training was delayed and "spread" over a three-year period. (*Id.*) Even after complaining to the HR Manager and the Union, plaintiff continued to suffer workplace discrimination. (*Id.*) Plaintiff attributes his lack of training as a QA Supervisor to gender discrimination. The QA Supervisor department allegedly had 30 employees, 95% of which are female. (*Id.* at ¶ 25.) The training supervisors for this department, who were both female employees, refused to train plaintiff. (*Id.* ¶¶ 24–25.) When plaintiff asked the training supervisors why he was not trained, they told him "that the department

2

does not want a male QA Supervisor." (*Id.* at ¶ 26.) In September 2015, plaintiff complained internally to the "QA Manager" about his denial of training, but no action was taken. (*Id.* at ¶ 27.) In October 2015, plaintiff was informed that he was "disqualified" from being a QA Supervisor "due to lack of training." (*Id.* at ¶ 28.) After plaintiff was disqualified as a QA Supervisor, defendant selected three female employees as QA Supervisors and all three received proper training. (*Id.* at ¶¶ 34–35.)

On or around January 3, 2018, plaintiff's position was Mechanic Helper. (*Id.* at ¶ 48.) As in the case with the past positions, defendant failed to provide him with adequate training as a Mechanic Helper. (*Id.* at ¶ 46.) Even after complaining to the HR Manager and the Union, plaintiff continued to suffer workplace discrimination. (*Id.* at ¶ 48.) Plaintiff attributes defendant's failure to train him as a Mechanic Helper to racial discrimination by defendant's employees, all of whom according to plaintiff are Caucasian males. (*Id.* at ¶ 46.) Plaintiff claims that on one occasion some of these employees "openly stated" in a public cafeteria that they "do not sit with Mexicans," rather they only "sit with white workers." (*Id.* at ¶ 47.) According to plaintiff, these employees insulted and humiliated him. (*Id.*)

Since 2015, plaintiff claims that he filed three charges with the Equal Employment Opportunity Commission ("EEOC") and/or California's Department of Fair Employment and Housing ("DFEH"). (*Id.* at ¶ 39; *see also id.* at ¶ 18 (plaintiff alleging that he filed "over four" EEOC/DFEH charges but not specifying the time frame).)

On March 29, 2018, plaintiff filed his "last complaint" with DFEH and the EEOC, EEOC Charge # 37A-2018-02860 ("2018 Charge"). (*Id.* at ¶ 9.) Attached to his complaint filed with this court, plaintiff has submitted portions of a DFEH intake form. (*Id.* at 19–26.) On that form, plaintiff checked the box alleging that he was discriminated against due to his "Sex/Gender." (*Id.* at 21.) Plaintiff did not check the box indicating a claim of discrimination due to his color, race, or national origin. (*Id.*) The intake form contains a hand-written description of the discrimination that plaintiff allegedly suffered. (*Id.* at 24.) Though some parts of plaintiff's description are difficult to decipher, it explains that in 2017, plaintiff re-raised the issue of prior discrimination when he was denied training as a QA Supervisor in 2015—the only year in which he was a QA

Supervisor. (*See id.*) Plaintiff was allegedly told, apparently by one of his supervisors, that men cannot multitask, and plaintiff told defendant's HR department about this incident. (*Id.*) In 2017, when he re-raised the issue, it appears that plaintiff claims he was told to "let it go" and that he was just hurting himself. (*Id.*) The intake form description also indicates that plaintiff was retaliated against after complaining internally about his lack of training as a QA Supervisor. (*Id.*)

On October 2, 2018, DFEH sent plaintiff a notice of right to sue for the 2018 Charge. (*Id.* at ¶ 10; *id.* at 18.) On November 9, 2018, the EEOC sent plaintiff a notice of right to sue for the 2018 Charge. (*See id.* at ¶ 10; *id.* at 17.)

## LEGAL STANDARD[1]

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

---

[1] In addition to seeking dismissal under Federal Rule of Civil Procedure 12(b)(6), defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction over plaintiff's claims three and four on the grounds that he failed to exhaust his administrative remedies under Title VII. (Doc. No. 8 at 3:27.) However, since the pending motion to dismiss was filed, and as mentioned below, the Supreme Court has held that Title VII's charge-filing requirement is not jurisdictional. *Fort Bend Cty., Tex. v. Davis*, ___U.S.___, 139 S. Ct. 1843, 1850 (2019). Accordingly, the court will analyze defendant's motion to dismiss only through the lens of Federal Rule of Civil Procedure 12(b)(6).

1986). While Federal Rule of Civil Procedure 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## DISCUSSION

Defendant argues that plaintiff's complaint must be dismissed in its entirety. With respect to plaintiff's first claim of discrimination and retaliation due to plaintiff's sex/gender in violation of Title VII, defendant argues that it is time barred. As to plaintiff's second claim, pay discrimination due to his sex/gender in violation of the EPA, defendant argues that plaintiff failed to allege that he was paid less than female employees while working in a similar position. On plaintiff's third claim of discrimination and retaliation due to his national origin and race in violation of Title VII, defendant argues that plaintiff failed to exhaust his administrative remedies because plaintiff failed to file a charge with EEOC/DFEH regarding this type of discrimination prior to the filing of his complaint in this action. As to plaintiff's fourth claim of retaliation after he filed charges with EEOC/DFEH, defendant argues that plaintiff has similarly failed to exhaust his administrative remedies. Finally, as to plaintiff's final claim of IIED, defendant argues that California courts have rejected plaintiff's theory that allegations of workplace discrimination are sufficient to state a cognizable claim for IIED. The court addresses each of plaintiff's claims and defendant's arguments for their dismissal in turn below.

**A.     First Claim: Gender Discrimination and Retaliation Under Title VII**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). Plaintiff alleges that defendant violated Title VII by failing to train him as a QA Supervisor because of his sex/gender.

Before filing a lawsuit to enforce Title VII, an employee must first file a timely charge with an administrative agency. 42 U.S.C. § 2000e-5. As the Supreme Court has explained, "[a] discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). Generally, discrimination claims under Title VII must be filed with the EEOC within 180 days from the date that the alleged discriminatory act occurred. 42 U.S.C. § 2000e-5(e)(1); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999). If the employee initiates a charge with a state that enforces its own anti-discrimination laws, known as a "deferral" state, the employee has 300 days to file such a charge. *Id.*

Because California is a deferral state, the 300-day period applies to plaintiff's claim. *See Bouman v. Block*, 940 F.2d 1211, 1220 (9th Cir. 1991). Plaintiff filed his 2018 Charge with DFEH on July 6, 2018. (Doc. No. 8-2.) Therefore, under the 300-day period, any discriminatory act that was taken against plaintiff before September 9, 2017 is barred and not actionable. *See* 42 U.S.C. § 2000e-5(e)(1); *Laquaglia*, 186 F.3d at 1174.

Under Title VII, "discrete" discriminatory acts are treated as separate unlawful practices and "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* After each discrete discriminatory act, an employee must file a charge for that unlawful act within 180 days (with EEOC) or within 300 days (with DFEH). *See id.*

Generally, discrete acts are those that can be "said to occur on any particular day." *See id.* at 115 (contrasting discrete discriminatory acts with a hostile working environment, which "occurs over a series of days or perhaps years"). The Supreme Court has treated the failure to train an employee as a discrete act under Title VII. *Id.* at 114–15 (finding that the employee's failure-to-train claim was timely asserted but concluding that "[a]ll prior discrete discriminatory

6

acts" were untimely and not actionable). Courts, including the Ninth Circuit, have endorsed this view. *See, e.g.*, *Lyons v. England*, 307 F.3d 1092, 1107 n.8 (9th Cir. 2002) (treating failure to train as a discrete act); *Phan v. Emp't Dev. Dep't*, No. 2:16-cv-00256-KJM, 2017 WL 3116826, at *4 (E.D. Cal. July 21, 2017) (finding that failure to train and certify are discrete acts); *Dixon v. Haw., Dep't of Educ.*, No. 16-00110 DKW, 2017 WL 6029589, at *6 (D. Haw. Dec. 5, 2017) ("Dixon was required to file an EEOC Charge within 300 days of each denial of training."); *Lassair v. Wilkie*, No. 2:17-01638-RAJ, 2019 WL 5212959, at *3 (W.D. Wash. Oct. 16, 2019) ("Actions such as failure to train, discipline, and denial of promotions are all considered 'discrete acts.'") (citing *Morgan*, 536 U.S. at 114).

Here, plaintiff's allegation that defendant failed to train him as a QA Supervisor in 2015 is a discrete discriminatory act under Title VII. This is the sole discriminatory act that plaintiff alleges in support of his first claim. (Doc. No. 1 at ¶¶ 53–57.) Because this discrete discriminatory act occurred prior to September 9, 2017 (i.e., more than 300 days before plaintiff filed his 2018 Charge), it is time barred and not actionable.[2] *See Morgan*, 536 U.S. at 114–15.

In his opposition to defendant's motion to dismiss, plaintiff suggests that the alleged discriminatory act occurred in 2018. (Doc. No. 10 at 5:5–9.) In his complaint, plaintiff alleges: "On and around November 2018, I have inquired with Defendant employees Teresa Caldwell, QA Supervisor and Amanda Hill, QA Manager about why my QA Supervisor Training is not being provided, they both were unable to resolve the workplace hostile environment." (Doc. No. 1 at ¶ 29.) Even though plaintiff made an inquiry in 2018 about the alleged prior discrimination,

---

[2] Plaintiff argues that the statutory period for his first claim is equitably tolled, citing two cases. (Doc. No. 10 at 5:21–6:12.) The first case relied upon by plaintiff in this regard is a state appellate court decision that found equitable tolling applied to the state's one-year requirement to file suit after receiving a right-to-sue letter from DFEH because the employee was pursuing his administrative remedies with the EEOC. *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1099 (1997). The second case plaintiff relies upon is a decision of the Ninth Circuit addressing the same issue in which that court found that the employee's state claim was not barred by the one-year statute of limitations where the employee was awaiting resolution of the EEOC's investigation. *Salgado v. Atl. Richfield Co.*, 823 F.2d 1322, 1325–26 (9th Cir. 1987). In this case, however, plaintiff does not assert state claims for discrimination under the Fair Employment and Housing Act, nor does he allege that the EEOC somehow prevented him from pursuing his claim earlier. Therefore, the two decisions upon which plaintiff relies do not save his claim.

the discrete discriminatory act occurred in 2015 because that was the only time that he was working in the position of a QA Supervisor and could have been denied training for that position. (*See id.* at ¶¶ 24, 28) (plaintiff alleging that he was "promoted" to QA Supervisor in August 2015 and "disqualified" in October 2015). Contrary to plaintiff's suggestion in his opposition to the pending motion, the allegations of his own complaint establish that the discrete discriminatory act that serves as the basis for his first claim did not occur in 2018.

Because the discrete discriminatory act that serves the basis for plaintiff's first claim occurred more than 300 days before he filed his 2018 Charge with DFEH, plaintiff's first claim will be dismissed.

**B.     Second Claim: Gender-Based Pay Discrimination Under the EPA**

To state a claim under the EPA, plaintiff must allege that: "(1) the work of the employees of one sex required the exercise of substantially equal skill, effort, and responsibility and was performed under similar working conditions as that of employees of the opposite sex, and (2) the pay to men and women was unequal." *See Roberts v. W. Airlines*, 425 F. Supp. 416, 428, n.23 (N.D. Cal. 1976) (noting that "the elements of a denial of equal pay are the same under both Title VII and the Equal Pay Act"). "To be substantially equal, the jobs need not be identical, but must require similar skills, effort, and responsibility performed under similar conditions; it is actual job performance requirements, rather than job classifications or titles, that is determinative." *E.E.O.C. v. Maricopa Cty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984) (internal quotations and citation omitted).

In support of his EPA claim, plaintiff alleges the same facts that form the basis of his first claim: plaintiff was denied training as a QA Supervisor in August 2015. (Doc. No. 1 at ¶¶ 58–63.) But the complaint does not allege that plaintiff performed the work of a QA Supervisor in or around August 2015. Additionally, the complaint does not allege that plaintiff was paid less than his female counterparts for his work as a QA Supervisor. Instead, plaintiff argues in his opposition to the pending motion, without any support, that he "has shown that Conagra Foods paid different wages to the other employee[s] who were female [and] who perform the same job that [plaintiff] did and they all worked under similar working conditions." (Doc. No. 10 at 7:22–

8

24.) This conclusory assertion is insufficient to survive dismissal. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that courts need not accept "a legal conclusion couched as a factual allegation"). Plaintiff's complaint does not "contain sufficient factual matter" for the court to infer that plaintiff has a claim under the EPA. *See Iqbal*, 556 U.S. at 678.

The EPA claim must also be dismissed because it is barred by the applicable statute of limitations. The limitations period for filing suit under the EPA is two years after the cause of action accrues, or three years for willful violations. 29 U.S.C. § 255(a); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (explaining that willful violations require a showing that the "employer either knew or showed reckless disregard as to whether its conduct was prohibited by statute"). Here, plaintiff does not allege that defendant willfully violated or recklessly disregarded the EPA. (*See* Doc. No. 1 at ¶¶ 58–63.) Accordingly, the two-year statute of limitations period applies.

Plaintiff's EPA claim as QA Supervisor is also barred by the statute of limitations because he only served in that role for two months in 2015. The Ninth Circuit has held that "[e]ach discriminatory paycheck" an employee receives "constitutes a separate violation of the EPA with a cause of action accruing (and the running of the limitations period commencing) upon the receipt of the discriminatory paycheck." *O'Donnell v. Vencor*, 465 F.3d 1063, 1068 (9th Cir. 2006). Here, plaintiff was a QA Supervisor from August 2015 to October 2015. (Doc. No. 1 at ¶¶ 24, 28.) Therefore, even if plaintiff plausibly stated a claim under the EPA—which he has not—his EPA claim would have been barred two years after he received his last paycheck as QA Supervisor, i.e., around October 2017. Because plaintiff did not file suit until December 2018, about a year after the applicable statute of limitations had expired, his EPA claim with respect to the QA Supervisor position is time barred. Accordingly, plaintiff's second claim will also be dismissed.

**C.     Third Claim: Race/National Origin Discrimination and Retaliation Under Title VII**

As discussed above, an employee who seeks to bring a Title VII claim must exhaust his or her administrative remedies by filing a charge with the appropriate agency within 180 or 300 days after the alleged unlawful employment act occurred. 42 U.S.C. § 2000e–5(e)(1). As also noted

above, the Supreme Court recently held that Title VII's charge-filing requirement is not jurisdictional. *Davis*, 139 S. Ct. at 1850. Nonetheless, "[t]he failure to observe Title VII's exhaustion requirements renders a suit subject to dismissal." *Kirby v. Brown*, No. 2:13-cv-00021-LKK, 2013 WL 4780767, at *7 (E.D. Cal. Sept. 5, 2013); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("Failure to observe [the exhaustion] requirements renders a suit subject to dismissal in the absence of any equitable consideration to the contrary.").

Moreover, a federal court may not consider allegations of discrimination that the plaintiff failed to include in his administrative charge "unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quoting *Green v. L.A. Cty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989)). "In determining whether an allegation under Title VII is like or reasonably related to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges." *Green*, 883 F.2d at 1476. The court may consider factors such as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge and any locations at which discrimination is alleged to have occurred." *B.K.B.*, 276 F.3d at 1100. To determine whether plaintiff satisfied the exhaustion requirement, the court should construe the language of the 2018 Charge "with the utmost liberality." *Kaplan v. Int'l Alliance of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975).

Here, plaintiff's third claim is for race/national origin discrimination and retaliation. (Doc. No. 1 at ¶¶ 64–81). However, the 2018 Charge submitted by plaintiff did not include any allegations regarding race/national origin discrimination and retaliation. (Doc. No. 1 at 16–26.) The 2018 Charge only checks the box for "Sex/Gender." (*Id.* at 21.) In addition, the narrative that plaintiff provided in his 2018 Charge only referred to gender discrimination. (*Id.* at 24.) Construing the 2018 Charge "with the utmost liberality," it simply does not refer to race/national origin discrimination. *See Kaplan*, 525 F.2d at 1359.

The Ninth Circuit has held that allegations which rely on different theories of discrimination are not like or reasonably related to one another. *See, e.g., Lowe v. City of*

10

*Monrovia*, 775 F.2d 998, 1004 (9th Cir. 1985), *amended by* 784 F.2d 1407 (9th Cir. 1986) (finding that an employee failed to exhaust a sex discrimination claim where she failed to allege sex discrimination along with the race discrimination claim in her EEOC charge); *Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044, 1051 (9th Cir. 1987) (affirming the district court's determination that the employee failed to exhaust her administrative remedies as to sex and age discrimination claims because her administrative charge was filed only with respect to national origin discrimination).

Plaintiff's allegation of race/national origin discrimination is not "like or reasonably related" to his 2018 Charge alleging gender discrimination. As a general matter, those two forms of discrimination are based on different theories. *See id.* Further, an investigation into plaintiff's gender discrimination claim would not have "encompassed" his claims of race/national origin discrimination. *See Green*, 883 F.2d at 1476. This is because the latter occurred nearly three years later and involved different supervisors. *See B.K.B.*, 276 F.3d at 1100. The gender discrimination alleged by plaintiff occurred in August 2015, (Doc. No. 1 at ¶ 54), whereas the alleged race/national origin discrimination occurred in July 2018. (*Id.* at ¶ 72.) Plaintiff was also allegedly subject to gender discrimination by two female supervisors, Ms. Malinda Vigil and Ms. Gracie Guerrero. (*Id.* at ¶ 54.) In contrast, plaintiff was allegedly subject to race/national origin discrimination by four different individuals. (*Id.* at ¶ 72.) Therefore, these two forms of discrimination that plaintiff allegedly suffered are not "like or reasonably related" to one another. *See B.K.B.*, 276 F.3d at 1100 (citation omitted).

Because plaintiff failed to file an administrative charge on his allegation of race/national origin discrimination, and because that allegation is not related to the 2018 Charge of gender discrimination he did submit, plaintiff's third claim will be dismissed due to his failure to exhaust. *See Karim-Panahi*, 839 F.2d at 626.

**D.     Fourth Claim: Retaliation Under Title VII After Filing EEOC/DFEH Charges**

Title VII prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007); *see also* 42 U.S.C. § 2000e-3(a). Here, plaintiff alleges that he was subject to

11

retaliation after he filed two DFEH/EEOC charges in 2014 ("2014 Charges"): EEOC Charge # 556-2014-00770 and EEOC Charge # 556-2014-00854. (Doc. No. 1 at ¶ 83.) Plaintiff's complaint does not provide any factual allegations describing the nature of his 2014 Charges. However, in support of their motion to dismiss defendant has submitted another charge submitted by plaintiff in which plaintiff complained of retaliation that he allegedly was subjected to as a result of his filing of the 2014 Charges ("Retaliation Charge" – EEOC Charge # 556-2016-00365) and therein plaintiff described the 2014 Charges he had filed. (Doc. No. 8-3.)[3] In his 2014 Charges plaintiff alleged that he had been subjected to race/national origin discrimination and retaliation, but no other details regarding those earlier filed charges were provided by plaintiff in his Retaliation Charge. (*Id.*) After the 2014 Charges were filed, plaintiff allegedly asked for time off from his job, but his request was denied. (*Id.*) Plaintiff believes that his request in this regard was denied because he filed the 2014 Charges. (*Id.*) Plaintiff subsequently filed the Retaliation Charge. (*Id.*) On January 9, 2018, the EEOC issued plaintiff a notice of right to sue only on the Retaliation Charge. (Doc. No. 8-4 at 1.)

After receiving a notice of right to sue, an employee must file suit in federal court within 90 days. 42 U.S.C. § 2000e-5(f)(1). "The requirement for filing a Title VII civil action within 90 days from the date EEOC dismisses a claim constitutes a statute of limitations." *Scholar v. Pac. Bell*, 963 F.2d 264, 266–67 (9th Cir. 1992). If an employee does not file suit within the 90-day period, "the action is barred[.]" *Id.* Here, the EEOC dismissed plaintiff's Retaliation Charge on January 9, 2018 (Doc. No. 8-4 at 1), but he did not file this lawsuit until December 11, 2018, almost a year after he received his right to sue letter and well beyond Title VII's 90-day period to file a lawsuit. (Doc. No. 1.) Therefore, to the extent plaintiff's fourth claim is based on his Retaliation Charge, it will also be dismissed because it is time barred. *See Scholar*, 963 F.2d at 266–67.

---

[3] The court may rely on this filing in deciding defendant's motion to dismiss. *See Lee*, 250 F.3d at 688 (holding that courts may rely on documents not attached to the complaint if their "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them) (citations omitted). Here, plaintiff's complaint references his 2014 Charges (and in fact, all of plaintiff's charges) and plaintiff does not dispute that document's authenticity.

To the extent that plaintiff's fourth claim is based on the 2018 Charge and on a theory that the retaliation plaintiff alleges he suffered in support of his fourth claim (Doc. No. 1 at ¶¶ 82–90) is "like or reasonably related" to the retaliation alleged in the 2018 Charge, plaintiff's fourth claim must still be dismissed. In the 2018 Charge, plaintiff described how he was retaliated against for making internal complaints to management. (*Id.* at 24 ("I talk to Amanda and Ming about it . . . and I told them how [Graciela] was treating me . . .").) However, plaintiff's fourth claim is based entirely on alleged retaliation in response to his filing of the 2014 Charges, which are external complaints made to EEOC and/or DFEH. (*Id.* at ¶ 83.) Further, the alleged retaliation for the 2014 Charges (i.e., plaintiff's request for time off was denied by supervisors) appears to have taken a different form than the retaliation plaintiff alleged in the 2018 Charge (i.e., plaintiff was retaliated against by other supervisors in an unspecified manner). (*See* Doc. Nos. 1 at 24; 8-3.) Finally, the alleged retaliation in response to plaintiff's filing of the 2014 Charges occurred after he complained about race/national origin discrimination, whereas the allegations of retaliation in the 2018 Charge occurred after plaintiff complained about gender discrimination. (*See id.*) Plaintiff does not argue or explain in any way how these two distinct incidents of retaliation are related to one another.

For these reasons, the court concludes that plaintiff has not exhausted his administrative remedies with respect to his fourth claim because he failed to file suit in a timely manner after receiving his notice of right to sue on his Retaliation Charge. *See Karim-Panahi*, 839 F.2d at 626. And the allegations underlying his fourth claim are not "like or reasonably related" to the retaliation plaintiff alleges in his 2018 Charge. *See B.K.B*, 276 F.3d at 1100. Accordingly, plaintiff's fourth claim will also be dismissed.

**E.     Fifth Claim: IIED Under California Law**

"To state a claim for intentional infliction of emotional distress" under California law, "a plaintiff must plausibly allege: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by plaintiff; and (3) plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct."

13

*Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 818–19 (N.D. Cal. 2019) (internal quotations and citation omitted). "Conduct is 'extreme and outrageous' when it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 978 (E.D. Cal. 2016) (citations omitted).

California courts have held that discrimination by itself is insufficient to state a claim for IIED. *See, e.g.*, *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996). "[I]t is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances." *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1128 (1989) (citations omitted). Additionally, "[a] simple pleading of personnel management activity is insufficient to support" an IIED claim, "even if improper motivation is alleged." *Janken*, 46 Cal. App. 4th at 80. This is because "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." *Id.* "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id.*

Here, plaintiff's IIED claim is foreclosed by the holding in *Janken* because the discriminatory conduct plaintiff alleges falls within the scope of defendant's personnel management decisions. *See, e.g.*, *Dupree v. Apple, Inc.*, No. 16-cv-00289-LHK, 2016 WL 4191653, at *7–8 (N.D. Cal. Aug. 9, 2016) (dismissing plaintiff's IIED claim because "complaints about his work schedule and ability to access Apple's training system fall clearly within the purview of personnel management actions"); *Bradshaw v. Glatfelter Ins. Grp.*, No. 1:08-cv-01898-OWW, 2009 WL 1438265, at *4 (E.D. Cal. May 20, 2009) ("Plaintiff has not alleged any facts that give rise to a reasonable inference that Defendants' conduct was anything other than management-level decisions."). For example, plaintiff's allegations that he was denied training for his position as QA Supervisor and as a Mechanic Helper are management-level decisions. The same is true with plaintiff's allegation that he was denied time off. While comments suggesting that men are incapable of multitasking and that Mexicans are not allowed to sit with certain workers in the cafeteria are no doubt insulting and inappropriate, they do not rise

to the level of "extreme and outrageous" conduct required for an IIED claim under California law. *See Yurick*, 209 Cal. App. 3d at 1128. Plaintiff cites no legal authority suggesting otherwise.

Plaintiff's IIED claim is based solely on discrimination and personnel management decisions by defendant's employees. *See Janken*, 46 Cal. App. 4th at 80. Because the proper remedy for such conduct is a lawsuit for discrimination, plaintiff's IIED claim must also be dismissed. *See id.*

**F.     Leave to Amend**

Federal Rule of Civil Procedure 15(a) instructs courts to "freely give leave when justice so requires." The Ninth Circuit has held that "a district court should grant leave to amend even if no requests to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation omitted). Further, the "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Id.* at 1131 (citation omitted). "Presumably unskilled in the law, the pro se litigant is far more prone to making errors than the person who benefits from the representation of counsel." *Id.* (citation omitted).

Plaintiff is a pro se litigant, he has not yet amended his complaint, and he requested leave to do so in his opposition to the pending motion to dismiss. (Doc. No. 10 at 12:20–22.) Further, although it is not at all clear to the court that plaintiff's complaint can "be cured by the allegation of other facts," in an abundance of caution, the court will grant leave to amend. *See Lopez*, 203 F.3d at 1130. However, plaintiff is forewarned to pay close attention to the legal standards set forth in this order before filing any amended complaint he may elect to file.

**CONCLUSION**

Accordingly:

1.     Defendant's motion to dismiss (Doc. No. 8) is granted in its entirety;

2.     Plaintiff's complaint (Doc. No. 1) is dismissed with leave to amend; and

/////

////

3. In the event plaintiff wishes to attempt to cure the deficiencies noted herein, he is granted twenty-one days from the issuance of this order to file an amended complaint.

IT IS SO ORDERED.

Dated: __**March 3, 2020**__   _/s/ Dale A. Drozd_
UNITED STATES DISTRICT JUDGE