UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO VERDUZCO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CONAGRA FOODS PACKAGED FOODS, LLC,<br><br>　　　　Defendant. | No. 1:18-cv-01681-DAD-SKO<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS</u><br><br>(Doc. No. 33) |

Plaintiff Arturo Verduzco filed this lawsuit against defendant Conagra Foods Packaged Foods, LLC after plaintiff was allegedly subject to workplace discrimination by defendant's employees. (Doc. No. 1.) The court previously granted defendant's motion to dismiss plaintiff's complaint for failure to state a claim with leave to amend and in the dismissal order instructed plaintiff "to pay close attention to the legal standards . . . before filing any amended complaint" in this action. (Doc. No. 27 at 15.) Thereafter, plaintiff filed a first amended complaint ("FAC"). (Doc. No. 29.) Currently pending before the court is defendant's motion to dismiss the FAC for failure to state a claim. (Doc. No. 33.) For the reasons explained below, defendant's motion to dismiss is granted in part and denied in part.

/////

/////

**BACKGROUND**

Plaintiff originally filed this action asserting various employment-discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Pay Act ("EPA"), and California common law for intentional infliction of emotional distress ("IIED"). (Doc. No. 1.) The court granted defendant's motion to dismiss the complaint in its entirety but granted plaintiff leave to amend. (Doc. No. 27.) The FAC reasserts some of the same claims the court previously dismissed, but includes new claims and additional factual allegations.

The FAC asserts seven claims against defendant: (1) gender discrimination under Title VII and California's Fair Employment and Housing Act ("FEHA")[1]; (2) disability discrimination under the American with Disabilities Act ("ADA") and under FEHA; (3) failure to accommodate under the ADA and FEHA; (4) failure to engage in the interactive process under the ADA and FEHA; (5) retaliation under Title VII for filing charges with the Equal Employment Opportunity Commission ("EEOC") and the Department of Fair Employment and Housing ("DFEH"); (6) pay discrimination under the EPA; and (7) IIED. (FAC at ¶¶ 50–137.)

The FAC's sixth and seventh claims are nearly identical to certain claims appearing in plaintiff's original complaint, with little to no different allegations in support thereof. For these two claims, the court incorporates by reference the supporting allegations as set forth in its previous dismissal order and will not summarize them again here. (*See* Doc. No. 27 at 2–3.)

The FAC's first claim for gender discrimination differs from the original claim in one material way but otherwise rests on the theory that plaintiff was discriminated against on the basis of his gender when he was denied training as a quality assurance supervisor. (*Compare* Doc. No. 1 at ¶ 52, *with* FAC at ¶ 59.) However, the alleged time frame in which plaintiff plausibly worked in that position has now been changed. The court found that the original complaint did not plausibly allege that plaintiff served as a quality assurance supervisor past October 2015.

---

[1] Although the FAC labels the claim as, "Gender Discrimination," the supporting allegations reference both Title VII and FEHA. (FAC at 11, ¶¶ 50–67.) The original complaint explicitly labeled the claim as a violation of Title VII and the supporting allegations did not mention FEHA. (Doc. No. 1 at 8, ¶¶ 52–59.) The court construes the FAC to allege gender discrimination under both Title VII and FEHA.

(*See* Doc. No. 27 at 7–8.) Given that date, the court found that plaintiff's claim in this regard was time-barred. (*Id.* at 8.) Plaintiff now alleges with documentary support that he served in that position, at least in some capacity, through November 2018. (FAC at ¶ 58.) As discussed below, this new factual allegation is material in assessing whether plaintiff's claim for gender discrimination is time-barred.

The FAC's fifth claim, alleging retaliation after filing charges with the EEOC and DFEH, also differs from plaintiff's original theory of retaliation. (*Compare* Doc. No. 1 at ¶¶ 82–90, *with* FAC at ¶¶ 110–127.) In his original complaint, plaintiff alleged that defendant retaliated against him for filing two EEOC/DFEH charges: EEOC Charge # 556-2014-00770 and EEOC Charge # 556-2014-00854 (the "2014 Charges"). (Doc. No. 1 at ¶ 83.) The 2014 Charges purportedly focused on race/national original discrimination, although no details were provided regarding the alleged discrimination. (*See* Doc. No. 8-3.) The theory of plaintiff's original retaliation claim was that his request for time off from work was denied because he filed the 2014 Charges. (*Id.*) Plaintiff then filed a charge with the EEOC/DFEH for retaliation based on the filing of the 2014 Charges: EEOC Charge # 556-2016-00365 (the "April 2016 Charge"). (*Id.*) On January 9, 2018, the EEOC issued a notice of right to sue on the April 2016 Charge. (Doc. No. 8-4 at 1.) Thus, the original complaint was filed based on the April 2016 Charge.

The FAC abandons the theory alleged in the April 2016 Charge, namely that defendant was retaliated against because he filed the 2014 Charges. Instead, the FAC's retaliation claim is based on two new theories. First, in or around January and February 2018, plaintiff claims that defendant failed to train him as a mechanic in retaliation for his complaints in 2015 when plaintiff was denied training as a quality assurance supervisor. (FAC at ¶ 113–14.) Second, in or around July and August 2019, plaintiff alleges that he was on a "medical restriction" and requested a reassignment in positions, from juice topping helper, which required plaintiff "to stand for several hours" and "caused him significant pain," to a position as a cook. (*Id.* at ¶ 115–16.) Defendant purportedly denied that request. (*Id.* at ¶ 116–19.) Plaintiff alleges that defendant's denial was in retaliation for plaintiff's complaining about gender and racial harassment in the past, including potentially the 2014 Charges. (*Id.* at ¶¶ 120–21 (citing the 2014 Charges).) On March 19, 2020,

3

plaintiff filed a charge with the DFEH claiming he had been retaliated against in 2018 and 2019 as discussed above (the "2020 Charge"). (*See id.* at 46–48.) The same day, the DFEH issued plaintiff a right to sue. (*Id.* at 45.) Thus, plaintiff's retaliation claim is now based on the 2020 Charge (not the April 2016 Charge, as it was in the original complaint).

The FAC's second, third, and fourth claims brought under the ADA are entirely new. On July 22, 2019, plaintiff informed defendant "that he was placed on limited duties by his doctor due to several herniated discs in his spine." (*Id.* at ¶ 72.) As a result of that condition, plaintiff was purportedly unable to lift more than 50 pounds and asked to be reassigned job positions because he could not perform his duties as a mechanic helper. (*Id.* at ¶ 73.) Plaintiff asked to be reassigned to a position as a cook but was told that other employees had priority. (*Id.* at ¶ 74.) Defendant denied that request for reassignment, even though plaintiff alleges he was more senior than other cooks and defendant employed fewer cooks than was necessary. (*Id.* at ¶¶ 74–75.) Due to the accommodation denial, plaintiff was diagnosed with two hernias on August 3, 2019. (*Id.* at ¶ 76.) Plaintiff was sent home on August 6, 2019 and has not returned to work since. (*Id.*) Although plaintiff continued to submit updates from his doctor every two months after being sent home, defendant refused to even meet with plaintiff and has not allowed him to return to work. (*Id.* at ¶ 77.) Plaintiff asserts three claims related to his disability. With respect to his disability discrimination claim, plaintiff alleges that he was denied workplace accommodation "due to his continual complaints regarding the gender and racial harassments claims he filed both within the company and with the EEOC and DFEH." (*Id.* at ¶ 78.) The FAC also asserts claims for failure to accommodate, (*id.* at ¶¶ 82–94), and failure to engage in the interactive process, (*id.* at ¶¶ 95–109.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Federal Rule of Civil Procedure 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The FAC attaches supporting documents, including portions of an administrative charge, right-to-sue notices issued by the EEOC and DFEH, and other material supporting plaintiff's claims. (*See* FAC 32–76.) In connection with the pending motion, defendant has submitted copies of plaintiff's administrative charges and the corresponding right-to-sue notices. (*See* Doc. No. 33-2, Exs. A–R.) Because the FAC attaches these documents or necessarily relies upon them and plaintiff does not dispute their authenticity, the court will consider these materials in resolving the pending motion to dismiss.

## ANALYSIS

Defendant moves to partially dismiss the FAC with prejudice for failure to state a claim. (*See* Doc. No. 33 at 2–4.) Specifically, defendant does not seek dismissal of plaintiff's claims for gender discrimination under FEHA (Claim One, Subpart Two), failure to accommodate under the

5

ADA and FEHA (Claim Three), and failure to engage in the interactive process under the ADA and FEHA (Claim Four). (*Id.* at 8–17.) However, defendant moves to dismiss all other claims in the FAC. (*Id.*) Plaintiff opposes dismissal of his claim for gender discrimination under Title VII (Claim One, Subpart One) and claim for retaliation in response to filing charges with the EEOC and DFEH (Claim Five). (Doc. No. 36.) Plaintiff does not oppose the motion to dismiss with respect to the following claims: disability discrimination under the ADA and FEHA (Claim Two), violation of the EPA (Claim Six), and IIED (Claim Seven). (*See id.* at 1–2, 6–11.) The court will address defendant's arguments below in the order they appear in the pending motion to dismiss.

**A.     Claim One: Gender Discrimination**

   1.     Title VII

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). Before filing a lawsuit under Title VII, an employee must first file a timely charge with an administrative agency. 42 U.S.C. § 2000e-5. "A discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). Generally, charges alleging discrimination under Title VII must be filed with the EEOC within 180 days from the date that the alleged discriminatory act occurred. 42 U.S.C. § 2000e-5(e)(1); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999). If an employee initiates a charge with a state that enforces its own anti-discrimination laws, known as a "deferral" state, the employee has 300 days to file such a charge. *Id.* Because California is a deferral state, the 300-day period applies to plaintiff's claim. *See Bouman v. Block*, 940 F.2d 1211, 1220 (9th Cir. 1991). After receiving a notice of right to sue, an employee must file suit in federal court within 90 days. 42 U.S.C. § 2000e-5(f)(1). "The requirement for filing a Title VII civil action within 90 days from the date EEOC dismisses a claim constitutes a statute of limitations." *Scholar v. Pac. Bell*, 963 F.2d 264, 266–67 (9th Cir. 1992). If an employee does not file suit within the 90-day period, "the action is

barred[.]" *Id.* at 267.

In his gender-discrimination claim brought under Title VII plaintiff alleges that he was discriminated against when he was denied training as a quality assurance supervisor but is vague regarding some key details with regard to that claim. (FAC at ¶¶ 50–67.) The court is mindful that the *pro se* FAC must be construed liberally. *See Erickson v. Pardus*, 55 U.S. 89, 94 (2007); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (explaining that, "particularly in civil rights cases," *pro se* pleadings must be given "the benefit of any doubt" (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*))). Therefore, the court will break down plaintiff's claim.

On the one hand, plaintiff alleges that he was denied training "[i]n or around August 2015" and that he complained about that denial of training "[i]n or around September 2015[.]" (FAC at ¶¶ 30, 35.) Plaintiff's clock to file an administrative charge should have started to run on the date that he was denied training in August 2015. This is because a failure to train is a discrete discriminatory act occurring on a "particular day"; it is not an act that "occurs over a series of days or perhaps years" as is the case with claims alleging a hostile working environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). On the other hand, plaintiff's allegations arguably give rise to a reasonable inference that he was denied training again on a separate occasion at a later date. *See Dixon v. Haw., Dep't of Educ.*, No. 16-00110 DKW, 2017 WL 6029589, at *6 (D. Haw. Dec. 5, 2017) ("Dixon's claims that she was denied training opportunities afforded to Barry in 2009 and 2012 are discrete acts, each separately actionable . . ."). While plaintiff alleges that he was disqualified or removed from his position around October or November 201<u>5</u>, (*see* FAC at ¶¶ 38, 57), he now alleges for the first time that he was "nominally kept in the position" through November 201<u>8</u>, (*see id.* at ¶ 58.) In support of the allegation that he was "nominally" a quality assurance supervisor through November 2018, plaintiff has attached to his FAC as an exhibit a copy of his "Probationary Job Training Evaluation" listing him as a quality assurance supervisor, which is dated November 9, 2018. (*Id.* at 50.) This allegation and the corroborating exhibit were absent from the original complaint. Moreover, the FAC alleges that plaintiff was denied training for that position in November 2018.

7

(*See id.* at ¶¶ 28, 54 ("Training was delayed and spread over three years . . .").) Plaintiff confirms this allegation in the opposition to the pending motion to dismiss. (*See* Doc. No. 36 at 3 (". . . Plaintiff was requesting to be trained, and being denied, well into 2018.").) Construing the allegations of the FAC in a light most favorable to him, plaintiff has plausibly alleged that he was denied training as a quality assurance supervisor during November 2018.

For the court to properly consider various denials of training, plaintiff must have filed a timely charge with the appropriate administrative agency for each alleged denial. *See Dixon*, 2017 WL 6029589, at *6 ("Dixon was required to file an EEOC Charge within 300 days of each denial of training."). Plaintiff cites and attaches just two such charges, and the related notices of his right to sue issued with respect to those charges, in support of his claim that he exhausted his administrative remedies. (*See* FAC at ¶¶ 14, 18–19.) Only one of the charges cited by plaintiff alleges gender discrimination based on the denial of training as a quality assurance supervisor (the "2018 Charge"). (*See id.* at ¶ 14 (referencing EEOC # 37A-2018-02860); *see* Doc. No. 33-2, Ex. A, at 5–6 (providing the allegations).) The 2018 Charge states that, on January 8, 2018, plaintiff was discriminated against because of his gender when he was denied training as a quality assurance supervisor. (Doc. No. 33-2, Ex. A, at 5.) Although it is unclear from the 2018 Charge itself, plaintiff alleges that he initiated this charge on March 29, 2018, which the court will accept as true for purposes of the pending motion. (*See* FAC at ¶ 14.)

Plaintiff's claim is not time-barred because he timely filed an administrative charge and this lawsuit in federal court. The discrimination allegedly took place on January 8, 2018, when plaintiff claims he was denied training as a quality assurance supervisor because of his gender. Plaintiff had until November 4, 2018 to timely file an administrative charge. *See* § 2000e-5(e)(1). He did so by filing the 2018 Charge on March 29, 2018, (FAC at ¶ 14), and thus his claim is properly exhausted. Further, plaintiff received a notice of right to sue from the EEOC on November 9, 2018. (FAC at 32; *see also id.* at 33 (attaching notice of right to sue issued by DFEH on October 2, 2018).) Plaintiff had until February 7, 2019 to timely file suit before this claim would be time–barred. *See* § 2000e-5(f)(1). He filed the original complaint on December

/////

11, 2018, well within the 90-day window.[2]  Therefore, plaintiff has plausibly stated a claim for gender discrimination under Title VII.

Defendant argues for dismissal based on a different failure-to-train incident and a different administrative charge (the "July 2016 Charge").  (*See* Doc. Nos. 33 at 10; 33-2, Ex. E, at 22–29.)  The court agrees that the July 2016 Charge, and the allegations contained within, cannot serve as the basis for plaintiff's gender-discrimination claim under Title VII because it is time-barred.  The July 2016 Charge alleges that plaintiff was discriminated against on the basis of his gender when he was denied training on or around October 16, 2015.  (Doc. No. 33-2, Ex. E, at 24.)  The July 2016 Charge was timely filed on July 10, 2016.[3]  *See* § 2000e-5(e)(1) (requiring plaintiff to file a charge by August 11, 2016 at the latest).  Plaintiff received a notice of right to sue on the July 2016 Charge from the DFEH on March 9, 2017 and from the EEOC on May 17, 2017.  (Doc. No. 33-2, Exs. F–G, at 30–32, 33–35.)  However, because the original complaint was filed on December 11, 2018, plaintiff did not file suit based on the July 2016 Charge before the statute of

---

[2]  Although defendant does not make the argument, the court notes that the date the original complaint was filed controls for purposes of analyzing the statute of limitations here.  Under Federal Rule of Civil Procedure 15(c)(1), "amendments made after the statute of limitations has run may 'relate back' to the date of the original pleading when the amended pleading arises 'out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'"  *Hebner v. McGrath*, 543 F.3d 1133, 1137–38 (9th Cir. 2008) (quoting Fed. R. Civ. P. 15(c)(1)).  "The relation back doctrine of Rule 15(c) is 'liberally applied.'"  *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citation omitted).  Here, the allegations supporting plaintiff's claim for gender discrimination in the FAC relate back to his original complaint because the two pleadings "share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question."  *See id.* (citation omitted).  Both pleadings concerned discrimination on the basis of gender when plaintiff was denied training as a quality assurance supervisor.  The only difference is that the FAC now plausibly alleges that plaintiff worked in that position during 2018 (contradicted by his own allegations in the original complaint) based on a corroborating document prepared by defendant.  Defendant had "fair notice" that plaintiff might be able to plausibly allege that he worked as a quality assurance supervisor during 2018.  Accordingly, plaintiff's claim is not barred by the statute of limitations.  *See, e.g.*, *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 907–08 (N.D. Cal. 2013) (finding the original complaint as the operative pleading for purposes of the 90-day window under § 2000e-5(f)(1) because the amendment related back).

[3]  Defendant claims that the July 2016 Charge was filed on September 30, 2016, (Doc. No. 33-1 at ¶ 7), however, the charge itself lists the "File Date" as "July 10, 2016," (Doc. No. 33-2, Ex. E, at 24.)  For purposes of the pending motion to dismiss, the court will accept as true the July date.

9

limitations expired. *See* § 2000e-5(f)(1) (requiring plaintiff to file suit by August 15, 2017 at the latest). Thus, plaintiff's claim based on the July 2016 Charge is time-barred.

However, plaintiff's Title VII gender-discrimination claim based on the 2018 Charge survives. Defendant's motion to dismiss this claim is denied.

    2.    FEHA

As noted above, the FAC adds a gender-discrimination claim under FEHA. (FAC at 11, ¶¶ 50–67.) Defendant's motion generally seeks dismissal of plaintiff's gender-discrimination claim "[u]nder Title VII" based upon the applicable statute of limitations. (Doc. No. 33 at 8–10.) That basis for dismissal is addressed above. The motion to dismiss makes no reference to plaintiff's gender-discrimination claim brought under FEHA. (*See passim id.* (citing law pertaining to Title VII only).) In its reply brief, defendant discusses California Government Code § 12960(e) for the first time, (*see* Doc. No. 37 at 2–3), even though the FAC referenced and cited the statute in the allegations supporting plaintiff's gender-discrimination claim, (FAC at ¶¶ 51, 53.) Because defendant did not raise any arguments with respect to plaintiff's FEHA-gender-discrimination claim in its motion to dismiss, defendant waived its argument presented for the first time in the reply brief. *United States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008) ("[A]rguments raised for the first time in a reply brief are generally considered waived."); *United States v. Rozet*, 183 F.R.D. 662, 667 (N.D. Cal. 1998) ("Legal issues raised for the first time in reply briefs are waived."). Therefore, to the extent defendant now seeks dismissal of plaintiff's claim for gender discrimination under FEHA—based on the denial of training as a quality assurance supervisor—the motion will be denied.

**B.    Claim Two: Disability Discrimination Under the ADA and FEHA**

"[T]o state a prima facie case of discrimination under the ADA" for disparate treatment, a plaintiff must allege that he: "(1) is disabled; (2) is qualified [for his job]; and (3) suffered an adverse employment action because of [his] disability." *Snead v. Metro. Prop. & Cas. Ins. Co.*,

/////

/////

/////

237 F.3d 1080, 1087 (9th Cir. 2001).[4]  A claim under FEHA for disability discrimination based on disparate treatment has the same elements.  *See Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1246 (2008).  Defendant moves to dismiss plaintiff's disability discrimination claim brought under the ADA and FEHA.  (*See* Doc. No. 33 at 10–11 n.2.)  Defendant's argument for dismissal is straight forward.

The FAC alleges that plaintiff was discriminated against when defendant refused to grant plaintiff's request to be reassigned as a juice topping helper to a position as a cook.  (FAC at ¶¶ 72–77.)  Yet plaintiff "alleges that these actions were taken against him due to his continual complaints regarding the *gender and racial harassment claims he filed* both within the company and with the EEOC and DFEH."  (*Id.* at ¶ 78.)  In other words, the FAC does not allege that defendant "suffered an adverse employment action *because of [his] disability*."  *Snead*, 237 F.3d at 1087 (emphasis added); *see also Avila*, 165 Cal. App. 4th at 1246 (explaining FEHA proscribes "an employer's intentionally discriminatory act against an employee *because of his or her disability* (referred to as disparate treatment discrimination)" (emphasis added)).  Instead, plaintiff claims that defendant continued to make him work in a particular position that posed difficulties for him, not because of his alleged disability itself, but rather, because defendant was ostensibly retaliating against plaintiff for his earlier complaints regarding gender and racial harassment.  Plaintiff does not address this persuasive argument in his opposition to the pending motion to dismiss.  (*See passim* Doc. No. 36.)  Therefore, plaintiff's claim for disability discrimination under the ADA and FEHA will be dismissed.

**C.     Claim Five:  Retaliation Under Title VII After Filing EEOC/DFEH Charges**

Title VII prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding."  *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007); *see also* 42 U.S.C. § 2000e-3(a).  As discussed above, an employee must timely file an administrative charge and a lawsuit in federal court.  § 2000e-5(e)(1); § 2000e-5(f)(1).

---

[4] A disparate treatment claim for discrimination under the ADA is distinct from claims regarding reasonable accommodations and/or the interactive process brought under the ADA.  *See Snead*, 237 F.3d at 1087 n.6.

11

Here, plaintiff's theory of retaliation is based on two alleged incidents summarized in his 2020 Charge, one occurring in 2018 and the other occurring in 2019. The court will address both of plaintiff's theories of liability below.

Plaintiff's claim fails to the extent it is based on alleged retaliation occurring in 2018. He alleges that he was retaliated against in February 2018 by being denied training as a mechanic due to his complaints three years earlier in 2015 in which he claimed he was denied training as a quality assurance supervisor. (FAC at ¶¶ 43, 113–14.) Drawing all reasonable inferences in plaintiff's favor, the court will assume that the alleged retaliation occurred on the last possible day, February 28, 2018. Plaintiff was thus required to submit an administrative charge with the DFEH by December 25, 2018—or 300 days after the alleged retaliation occurred. *See* § 2000e-5(e)(1). But plaintiff did not initiate the 2020 Charge until March 19, 2020—more than a year after the deadline to do so had passed. (*See* FAC at 46–48.) Nor has plaintiff identified any other administrative charge alleging this theory of retaliation. Accordingly, plaintiff's retaliation claim—based on the claim of being denied training as a mechanic in February 2018—will be dismissed.

However, to the extent plaintiff's claim is based on alleged retaliation occurring in 2019, it survives the pending motion to dismiss. The FAC alleges that plaintiff's request for reassignment to the cook position was denied in 2019 because of prior gender and racial harassment claims he filed internally with defendant and externally with the EEOC and DFEH. (FAC at ¶¶ 115–20.) The FAC alleges that plaintiff was denied reassignment in or around July 2019. (*See id.* at ¶ 115, 119.) The 2020 Charge makes the same allegations. (*Id.* at 46–48.) Defendant does not seek dismissal of this theory of retaliation on administrative-exhaustion or statute-of-limitation grounds.

Instead, defendant points out that the FAC and 2020 Charge reference previously filed race and gender *harassment* charges, whereas those prior charges themselves actually referred to race and gender *discrimination*. (Doc. No. 37 at 5.) Defendant makes two arguments in support of dismissal of this claim, neither of which are persuasive. First, defendant argues that for purposes of the pending Rule 12(b)(6) motion, the court should not accept as true the allegations

12

of prior "harassment" charges because they are contradicted by the fact that plaintiff's actual prior charges concerned "discrimination." (Doc. No. 33 at 14.) The court disagrees that there is any contradiction whatsoever. As defendant's own cited authority shows, courts use these terms interchangeably in the context of Title VII. *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644–46 (9th Cir. 2003) (using "harassment" and "discrimination" interchangeably and making no distinction between the two).[5] But even if there was some contradiction between the words "discrimination" and "harassment," it is not so contradictory as to disregard the FAC's allegations on a motion to dismiss. *See, e.g.*, *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1102 (D. Ariz. 2003) ("At this stage of the litigation, however, the district court must resolve any ambiguities in the considered documents in the plaintiff's favor."); *Ruhnke v. SkinMedica, Inc.*, No. SACV 14-0420-DOC, 2014 WL 12577172, at *7 (C.D. Cal. Sept. 5, 2014) (finding that judicially-noticed material did not "unambiguously contradict[]" the plaintiff's allegations).

      Defendants also make a second, related, argument. In his opposition, plaintiff clarifies that he intended to allege in his FAC retaliation based on prior *discrimination*. (Doc. No. 36 at 10.) Defendant correctly observes that the court may not consider new claims asserted in a lawsuit for the first time "unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." (Doc. No. 37 at 5) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)). Accepting plaintiff's concession that he intended to allege discrimination in his FAC, defendant argues that discrimination (as was intended to be alleged in the FAC) and harassment (as was alleged in the 2020 Charge) are not "like or reasonably related" to one another. (*Id.*) This argument is without merit. As an initial matter, the court must construe the 2020 Charge "with the utmost liberality." *See Kaplan v. Int'l All. of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975), *abrogated on other grounds by Laughon v. Int'l All. of Theatrical Stage Emps.*, 248 F.3d 931 (9th Cir. 2001). The 2020 Charge summarizes plaintiff's medical issue, his request to be reassigned from a juice topping helper to a cook

---

[5] The court observes that one of the exhibits attached to the FAC—a DFEH intake form for employment discrimination complaints—makes no distinction between "discrimination" and "harassment" in at least one location. (*See, e.g.*, FAC at 37 (listing over 20 selections for retaliatory conduct, including, "Reported or resisted any form of discrimination or harassment").)

13

position, defendant's denial, and alleges that plaintiff "believe[s] these actions were taken against [him] due to [his] continual complaints regarding the gender and racial *harassment* claims [he] filed both within the company and with the EEOC and DFEH." (FAC at 47 (emphasis added).) Construing the 2020 Charge in plaintiff's favor, as the court must, it is clear that he was referencing prior adverse treatment on the basis of his gender and race. Drawing a distinction between adverse treatment taking the form of harassment as opposed to discrimination, or vice versa, is inconsistent with liberally interpreting administrative grievances. More to the point, defendant fails to cite any case taking such a narrow interpretation of the "like or reasonably related" standard. (Doc. No. 37 at 5) (citing *Vasquez*, 349 F.3d at 644–46 (holding that retaliation for filing an internal grievance was not similar to retaliation for filing a discrimination charge with the EEOC because the allegations rested on different retaliatory conduct occurring during different time periods and involving different individuals)). This is not a case where the administrative charge alleged a certain retaliatory act (*e.g.*, denied time off) and the complaint filed in federal court alleges a completely different retaliatory act (*e.g.*, denied training). It is also not a case where the administrative charge alleged retaliation based on certain protected activity (*e.g.*, complaining of race discrimination) and the complaint filed in federal court alleges retaliation based on completely different protected activity (*e.g.*, complaining of gender discrimination). *See, e.g.*, *Lowe v. City of Monrovia*, 775 F.2d 998, 1004 (9th Cir. 1985), *amended by* 784 F.2d 1407 (9th Cir. 1986) (finding that an employee failed to exhaust a sex-discrimination claim where her EEOC charge only mentioned racial discrimination); *Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044, 1051 (9th Cir. 1987) (affirming district court's determination that employee failed to exhaust her administrative remedies as to sex and age discrimination because her administrative charge only alleged discrimination on the basis of national origin). Instead, this is a case where the 2020 Charge alleged a retaliatory act based on protected activity and the FAC alleges the same retaliatory act based on, essentially, the same protected activity but worded somewhat imprecisely. Nor does defendant discuss the relevant factors in determining whether allegations "like or reasonably related" to one another, such as "whether the original EEOC investigation would have encompassed the additional charges."

14

*Green v. Los Angeles Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1476 (9th Cir. 1989); *see also B.K.B.*, 276 F.3d at 1100 (considering "the alleged basis of the discrimination, dates of the discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred" as well as the extent to which the new claims "are consistent with the plaintiff's original theory of the case"). Had the EEOC investigated plaintiff's retaliation claim due to his prior complaints for harassment on the basis of race and gender, the investigation "would have encompassed" that same retaliation due to plaintiff's prior complaints for discrimination on the exact same basis. *See Green*, 883 F.2d at 1476. The court concludes that requiring use of the word "discrimination" in the 2020 Charge, as opposed to "harassment," has no basis in law or common sense.

Plaintiff has plausibly alleged a retaliation claim under Title VII on the basis of allegedly being denied reassignment to a cook position because he previously filed EEOC/DFEH charges alleging gender and race discrimination in the workplace. Accordingly, defendant's motion to dismiss the retaliation claim—based on being denied reassignment to the position of cook—will be denied. However, the motion to dismiss plaintiff's retaliation claim—based on an alleged failure to train plaintiff as a quality assurance supervisor—will be granted.[6]

**D.      Claim Six: Gender-Based Pay Discrimination Under the EPA**

To state a claim under the EPA, plaintiff must allege that: "(1) the work of the employees of one sex required the exercise of substantially equal skill, effort, and responsibility and was performed under similar working conditions as that of employees of the opposite sex, and (2) the pay to men and women was unequal." *See Roberts v. W. Airlines*, 425 F. Supp. 416, 428 (N.D. Cal. 1976). "To be 'substantially equal,' the jobs need not be identical, but must require similar

---

[6] In the event the court allows plaintiff's retaliation claim to survive in part, defendant asks the court to dismiss the "time-barred allegations contained in paragraphs 112–144 of the FAC and limit [the] retaliation claim to the allegations regarding [plaintiff's] medical conditions . . . as alleged in paragraphs 115–120 of the FAC." (Doc. No. 37 at 5.) Given that the FAC does not contain 144 paragraphs, defendant's request in this regard is confusing. However, it appears defendant requests that the court dismiss the retaliation allegations as it pertains to plaintiff's first theory (*i.e.*, denied training as a mechanic), but allow the retaliation allegations concerning plaintiff's second theory (*i.e.*, denied reassignment to cook). Construed as such, defendant's request will be granted.

15

skills, effort, and responsibility performed under similar conditions; it is actual job performance requirements, rather than job classifications or titles, that is determinative." *E.E.O.C. v. Maricopa Cnty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984) (citation omitted).

Here, dismissal of plaintiff's amended EPA claim is warranted. The FAC's allegations supporting the EPA claim are more conclusory than those contained in plaintiff's original complaint. (*Compare* Doc. No. 1 at ¶¶ 58–63, *with* FAC at ¶¶ 128–31.) In the FAC plaintiff fails to allege that he was paid less than his female counterparts for performing similar work as a quality assurance supervisor. Plaintiff alleges that he was disqualified from being a quality assurance supervisor about two or three months after being promoted to that role in 2015, although he alleged he was "nominally kept in the position" through November 2018. (FAC at ¶¶ 30, 36, 38, 58.) The FAC does not allege that plaintiff performed similar duties, used the same effort, or had similar skills (given that plaintiff is complaining of being denied training for that very position) as compared to the female quality assurance supervisors. In fact, the FAC does not allege that plaintiff ever worked as a quality assurance supervisor during that short two-to-three-month period of time where he was quickly promoted and disqualified. Plaintiff's claim that he "nominally" worked as a quality assurance supervisor also does not plausibly suggest that he actually performed similar duties or used the same effort as compared to the female quality assurance supervisors. But most importantly, even assuming plaintiff plausibly alleged that he performed the duties of quality assurance supervisor, the FAC fails to allege that plaintiff was actually paid less. Plaintiff's allegation that he "was pay-discriminated and retaliated against," (*id.* at ¶ 129), is a legal conclusion cast in the form of a factual allegation and will not be credited for purposes of ruling on the pending motion to dismiss. *See Ringrose*, 788 F.2d at 643 n.2. Plaintiff's main grievance appears to be that he was denied training as a quality assurance supervisor—not that he was paid less for actually performing a similar position as compared to his female coworkers. (*See id.* at ¶ 129 ("Defendant has allowed to award positions to females and provide due training to said females while refusing to do the same to Plaintiff who is male.").) In sum, the allegations of the FAC do not "allow the court to draw the reasonable inference that the defendant is liable" under the EPA. *See Iqbal*, 556 U.S. at 678. In light of this

conclusion, the court need not address defendant's secondary argument that the claim is time-barred.  Plaintiff's EPA claim will therefore be dismissed.

**E.     Claim Seven:  IIED Under California Law**

To state a claim for IIED, plaintiff must allege:  "(1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by plaintiff; and (3) plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct."  *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 818–19 (N.D. Cal. 2019) (citation omitted).  "Conduct is 'extreme and outrageous' when it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 978 (E.D. Cal. 2016) (citations omitted).

In his FAC plaintiff has simply re-alleged his IIED claim with little to no different allegations than those advanced in support of his IIED claim as asserted in his original complaint.  (*Compare* Doc. No. 1 at ¶¶ 91–98 (alleging that the extreme and outrageous conduct was the failure to train him as a quality assurance supervisor, pay discrimination, and retaliation for filing previous charges with the EEOC and DFEH), *with* FAC at ¶¶ 133–34 (same).)  Dismissal of plaintiff's amended IIED claim is therefore warranted for the same reasons the court dismissed his original IIED claim.  (*See* Doc. No. 27 at 13–15.)  Plaintiff cannot plausibly state an IIED claim based on defendant's personnel management decisions.  *See, e.g.*, *Dupree v. Apple, Inc.*, No. 16-cv-00289-LHK, 2016 WL 4191653, at *7–8 (N.D. Cal. Aug. 9, 2016) (dismissing plaintiff's IIED claim because "complaints about his work schedule and ability to access Apple's training system fall clearly within the purview of personnel management actions"); *Bradshaw v. Glatfelter Ins. Grp.*, No. 1:08-cv-01898-OWW, 2009 WL 1438265, at *4 (E.D. Cal. May 20, 2009) ("Plaintiff has not alleged any facts that give rise to a reasonable inference that Defendants' conduct was anything other than management-level decisions."); *see also Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) (dismissing an IIED claim based on personnel management decisions allegedly motivated by discrimination because "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and

17

prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."). Therefore, defendant's motion will be granted as to this claim and plaintiff's IIED claim will be dismissed.

### F. Leave to Amend

Federal Rule of Civil Procedure 15(a) instructs courts to "freely give leave when justice so requires." "It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). Nonetheless, a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989)). A district court may deny leave to amend a second time based on the failure to cure previously noted deficiencies. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008). To avoid dismissal with prejudice after leave to amend was previously granted, a plaintiff should disclose facts that he or she believes will help cure any deficiencies. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). "A plaintiff may not in substance say 'trust me,' and thereby gain a license for further amendment when prior opportunity to amend had been given." *Id.* Here, plaintiff was granted leave to amend once. (Doc. No. 27 at 15–16.) While plaintiff seeks further leave to amend in his opposition to the pending motion to dismiss, he does not proffer any additional facts that he could allege if granted that opportunity. (*See* Doc. No. 36 at 5.) The court therefore concludes that, as to some of plaintiff's claims, the granting of further leave to amend would be futile since plaintiff has failed to cure the previously explained deficiencies in his complaint.

Plaintiff's claim for disability discrimination under the ADA and FEHA (Claim Two) will be dismissed with leave to amend because it appears the claim could potentially "be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation omitted). Plaintiff's Title VII claim for retaliation, in which plaintiff alleges that he was denied training in

2018 as a mechanic in retaliation for filing complaints claiming that he was denied training as a quality assurance supervisor in 2015 (Claim Five, Subpart One), will be dismissed without leave to amend. Although the original complaint did not present this theory of retaliation, "plaintiff [wa]s forewarned to pay close attention to the legal standards set forth" in the court's original dismissal order. (Doc. No. 27 at 15.) Because the FAC's retaliation claim on the basis of plaintiff allegedly being denied training as a mechanic in 2018 relies on the same flawed legal understanding the court previously rejected in detail, the claim based upon that same theory of retaliation will be dismissed without leave to amend. Plaintiff's EPA claim (Claim Six) will be dismissed without leave to amend because plaintiff failed to cure previously explained deficiencies in his original complaint by essentially copying-and-pasting that same claim into his FAC. Plaintiff's IIED claim (Claim Seven) will also be dismissed without leave to amend for the same reasons.

To summarize, plaintiff's remaining claims asserted in the FAC are: gender discrimination under Title VII (Claim One, Subpart One) and FEHA (Claim One, Subpart Two); failure to accommodate under the ADA and FEHA (Claim Three); failure to engage in the interactive process under the ADA and FEHA (Claim Four); and retaliation under Title VII based on the denial of a job reassignment in 2019 (Claim Five, Subpart Two). Plaintiff will be granted further leave to amend his claims for disability discrimination under the ADA and FEHA (Claim Two)[7], but he will not be granted further leave to amend any of his other claims dismissed by this order.

/////

/////

---

[7] Should plaintiff elect to continue to pursue his disability discrimination claims under the ADA and FEHA by filing a second amended complaint, he shall comply with the requirements of the Federal Rules of Civil Procedure, and the Local Rules of this court. Any second amended complaint must bear the docket number assigned to this case and be labeled "Second Amended Complaint." Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. Any second amended complaint will supersede the original and first amended complaints. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Therefore, in a second amended complaint, each claim and the involvement of the defendant must be sufficiently alleged.

**CONCLUSION**

Accordingly:

1. Defendant's motion to dismiss the first amended complaint (Doc. No. 33) is granted in part and denied in part;

2. In the event plaintiff wishes to attempt to attempt to cure the noted deficiencies with respect to his claims that have been dismissed with leave to amend, he is granted twenty-one (21) days from the issuance of this order to file a second amended complaint.

IT IS SO ORDERED.

Dated: **June 7, 2021**

_____
UNITED STATES DISTRICT JUDGE