UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO VERDUZCO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CONAGRA FOODS PACKAGED FOODS, LLC,<br><br>　　　　　Defendant. | No. 1:18-cv-01681-TLN-CKD<br><br>**ORDER** |

　　　　This matter is before the Court on Plaintiff Arturo Verduzco's ("Plaintiff") Motion for Leave to Amend. (ECF No. 155.) Defendant ConAgra Foods Packaged Foods, LLC ("Defendant") filed an opposition. (ECF No. 157.) Plaintiff did not file a reply. Also before the Court is Defendant's Motion for Summary Judgment. (ECF No. 143.) Defendant's Motion for Summary Judgment is fully briefed. (ECF Nos. 146, 153.) For the reasons set forth below, the Court DENIES Plaintiff's Motion for Leave to Amend (ECF No. 155) and GRANTS Defendant's Motion for Summary Judgment (ECF No. 143).

///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises from alleged wrongful conduct relating to Plaintiff's employment with Defendant. Plaintiff is a current employee at Defendant's production facility in Oakdale, California. (ECF No. 145 at 2.) Plaintiff's employment is subject to a collective bargaining agreement ("CBA"), which limits Defendant's ability to transfer employees. (*Id.* at 3.) At Defendant, there are "general labor" jobs and there are "bid" jobs. (*Id.*) Employees can only obtain a "bid" job by bidding on it when an opening is posted and by having the necessary seniority to win the position. (*Id.* at 4.) Under the CBA, in order to become qualified for a new bid position, employees who have never held the position before must complete an on-the-job training for a period of thirty days. (*Id.*) After the training period, to be considered for a new job opening, the employee must present acceptable documentation of a demonstrable change in ability or qualifications and/or skills in order to be deemed qualified for the position. (*Id.*)

Plaintiff has primarily worked as a cook, but he has held numerous positions with Defendant, including in Defendant's Quality Control/Quality Assurance ("QA") department. (*Id.* at 5.) On September 4, 2015, Plaintiff was awarded the bid for the QA Supervisor Temp position. (*Id.* at 6.) Plaintiff completed a total of two weeks of training for the QA Supervisor Temp position in 2015. (*Id.*) While Plaintiff was being trained, a QA Supervisor observed that Plaintiff did not want to take directions from her and that Plaintiff was not understanding basic job concepts. (*Id.* at 6–7.) Plaintiff did not complete his training as a QA Supervisor Temp in 2015. (*Id.*) In December 2017, Defendant was informed that Plaintiff requested to complete his training as a QA Supervisor Temp. (*Id.* at 7.) Plaintiff resumed his training to become a QA Supervisor Temp in December 2017, but his training was interrupted due to operational reasons beyond his control, including the Oakdale plant's closure for one week, holiday closures, and staffing shortages in the Bean Department that required Plaintiff to be reassigned from his QA Supervisor Temp position to his previous position of Bean Cook. (*Id.* at 8.)

On January 3, 2018, Plaintiff bid for and was awarded the Cannery Mechanic — Class B, Bracket II position. (*Id.* at 9.) Due to constant absenteeism in the Bean Cook position and other positions in the Oakdale facility, there were numerous instances where Defendant could not start

1  training employees as soon as those employees were awarded a new position, which was the case
2  for Plaintiff and his training as a Mechanic. (*Id.* at 10.) In January 2018, Plaintiff met with
3  representatives for Defendant who informed him that it would not be feasible for Plaintiff to
4  simultaneously train to be qualified as both a QA Supervisory Temp and Cannery Mechanic due
5  to the substantial differences between the two positions. (*Id.*) Defendants' representatives asked
6  Plaintiff which position he was most interested. (*Id.*) While Plaintiff initially responded that he
7  wanted to pursue both positions, he agreed he would decide between the two. (*Id.* at 10-11.)
8  Plaintiff continued to work in his position of Bean Cook due to Defendant's business needs, but
9  Defendant did not hear back from Plaintiff regarding his decision to pursue either position until
10 he later filed a grievance with the Union, resulting in an arbitration hearing on May 8, 2018. (*Id.*)
11 Following the hearing, Plaintiff was scheduled to begin his training for the Mechanic position in
12 June 2018. (*Id.* at 12.) Based on Plaintiff's performance during his training for the Mechanic
13 position, he was disqualified from the position on July 18, 2018. (*Id.* at 13.) Following his
14 disqualification, Plaintiff returned to his previous permanent position bid as a Bean Cook. (*Id.*)
15   In late September 2018, Plaintiff bid for and was awarded the Maintenance Helper
16 position. (*Id.* at 14.) Because Plaintiff accepted the position as a Maintenance Helper, Plaintiff
17 no longer held the position of Bean Cook, but he continued to hold the QA Supervisor Temp bid,
18 although he had not yet become "qualified" through training. (*Id.*) On September 19, 2018,
19 Defendant received Plaintiff's Qualified Medical Evaluation ("QME") report related to Plaintiff's
20 alleged injuries and workers' compensation claims, which listed that Plaintiff required permanent
21 work restrictions. (*Id.*) Defendant evaluated whether Plaintiff's restrictions could be
22 accommodated by assessing the essential job functions of various roles for which he was
23 qualified, including the Maintenance Helper position, the Bean Cook position, and the Can Run
24 Attendant position. (*Id.*) Defendant was able to reassign Plaintiff to receive additional QA
25 Supervisor Temp training, and Plaintiff spent eleven additional days in QA Supervisor training in
26 November 2018. (*Id.* at 16.) Plaintiff held the QA Supervisor Temp bid for several years until he
27 voluntarily disqualified himself from it upon his return from leave in May 2023. (*Id.*)
28   On June 18, 2021, Plaintiff filed the operative Second Amended Complaint ("SAC"),

3

1  alleging four causes of action: (1) gender discrimination under Title VII of the Civil Rights Act
2  and the Fair Employment and Housing Act ("FEHA"); (2) failure to accommodate under the
3  Americans with Disability Act ("ADA") and FEHA; (3) failure to engage in the interactive
4  process under the ADA and FEHA; and (4) retaliation under Title VII.[1]  (ECF No. 47.)  On
5  September 24, 2024, Defendant filed its Motion for Summary Judgment.  (ECF No. 143.)  On
6  November 13, 2024, Plaintiff filed his Motion to Amend.  (ECF No. 155.)  The Court will first
7  address Plaintiff's Motion to Amend and then turn to Defendant's Motion for Summary
8  Judgment.

##    II.    MOTION FOR LEAVE TO AMEND

Plaintiff seeks to amend his Second Amended Complaint ("SAC") to include allegations regarding incidents that occurred between 2023 and 2024, which he contends were not available at the time of the filing of the SAC.  (ECF No. 155.)  Such events include: Plaintiff's return to work after the lifting of work restrictions; the denial of Plaintiff's request for an accommodation in May 2023; the denial of Plaintiff's promotion to a more senior position; Defendant's failure to respond to Plaintiff's request for leave under the Family and Medical Leave Act in January 2024; the rejection of Plaintiff's sabbatical request in January 2024; a confrontation with Human Resources personnel in July 2024; Plaintiff's termination in mid-2024; and Plaintiff's subsequent rehire.  (*Id.* at 9–10.)  In addition, Plaintiff seeks to add a new individually named defendant and Does 1–10.  (*Id.* at 4.)  Finally, Plaintiff seeks to add two causes of action for (1) failure to prevent discrimination and retaliation and (2) violation of California Labor Code § 1102.5.  (*Id.* at 10.)  Plaintiff argues Defendant will not be prejudiced as the allegations and causes of action are closely related to Plaintiff's existing claims, discovery remains open, and no dispositive motions have been filed.  (*Id.* at 11.)  Finally, Plaintiff contends his recent retention of counsel warrants

---

[1] Plaintiff's SAC includes two theories of liability for his cause of action for retaliation under Title VII: (a) failure to train Plaintiff as a Mechanic because of Plaintiff's alleged prior complaints regarding lack of training for the QA Supervisor Temp position, and (b) failure to reassign him to the Cook position because of Plaintiff's prior complaints of gender and race harassment. (ECF No. 47.) However, Plaintiff's cause of action for relation under Title VII under the theory articulated in subpart (a) was previously dismissed without leave to amend. (ECF No. 46 at 19.) Accordingly, the Court does not address it herein.

4

1    consideration in favor of granting leave to amend. (*Id.*)

2    In opposition, Defendant points out that Plaintiff's motion was filed seven weeks after Defendant moved for summary judgment, over a year after the close of discovery, one and a half years after Plaintiff retained new counsel, two and half years after the Court-ordered deadline to amend the pleadings, and nearly three years after the filing of the SAC. (ECF No. 157 at 2.) Defendant argues that Plaintiff's actions do not demonstrate that Plaintiff acted with diligence but rather, that he acts in bad faith in seeking leave to amend. (*Id.* at 4–6.) Defendant contends the parties agreed to modify the scheduling order on several occasions but at no point did Plaintiff indicate an intent to amend the pleadings. (*Id.*) Defendant further contends the events that Plaintiff seeks to include in an amended complaint occurred as early as May 2023, with the latest occurring in early July 2024. (*Id.*) Defendant argues this delay in seeking amendment highlights Plaintiff's lack of diligence and an improper motive. (*Id.*) In addition, Defendant argues it will be prejudiced if leave to amend is granted because its motion for summary judgment is fully briefed and submitted, and discovery closed over a year ago. (*Id.* at 7.) Finally, Defendants argue Plaintiff's amendment would be futile because the proposed Third-Amended Complaint does not allege compliance with exhaustion requirements. (*Id.* at 9-10.)

Granting or denying leave to amend a complaint rests in the sound discretion of the trial court. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). When the Court issues a scheduling order that establishes a timetable to amend the complaint, Federal Rule of Civil Procedure ("Rule") 16 governs any amendments to the complaint. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). To allow for amendment under Rule 16, a plaintiff must show good cause for not having amended the complaint before the time specified in the scheduling order. *Id.* The good cause standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recs., Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Even if the good cause standard is met under Rule 16, the Court has the discretion to refuse amendment if it finds reasons to deny leave to amend under Rule 15(a). *Johnson*, 975 F.2d at 610. Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and the "court should freely give leave when justice so

1    requires." The Ninth Circuit has considered five factors in determining whether leave to amend
2    should be given: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of
3    amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States*
4    *Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (citation omitted).

5    Plaintiff fails to persuade the Court that he has been diligent. This case has been pending
6    since December 2018 (ECF No. 1), and Plaintiff moves for leave to amend the SAC at a very late
7    stage in the litigation. Yet, Plaintiff fails to explain or otherwise offer any reason why he did not
8    seek to add new factual allegations or causes of action sooner when much of the "new"
9    information appears to have been available to Plaintiff for years. While Plaintiff claims that
10   recent retention of counsel warrants consideration in favor of granting leave to amend, Plaintiff's
11   counsel appeared in this case in February 2023 — six months before fact discovery closed in
12   August 2023 — and yet, Plaintiff made no effort to amend the pleadings until now. (ECF Nos.
13   95, 99.) Indeed, the parties agreed to modify the scheduling order on several occasions and even
14   re-opened discovery after the fact discovery deadline passed, but Plaintiff never indicated a need
15   to modify the deadline to amend the pleadings. (ECF No. 157 at 2–3.)

16   Although the Court need not consider Plaintiff's request for leave under Rule 15 since no
17   good cause exists, the Court nevertheless notes that leave is also inappropriate under Rule 15. In
18   addition to undue delay, the Court finds persuasive Defendants' arguments on the prejudice and
19   futility factors. Defendants highlight resources expended for their motion for summary judgment
20   and the jurisdictional hurdles Plaintiffs fail to overcome in their proposed pleading. The Court
21   also notes that Plaintiff's statement that the amendment would make the pending motion for
22   summary judgment moot (ECF No. 155 at 10) suggests the possibility that Plaintiff does not seek
23   leave in good faith.

24   Accordingly, the Court finds Plaintiff has failed to show good cause under Rule 16 and
25   leave to amend is also not appropriate under Rule 15. Thus, Plaintiff's Motion for Leave to File
26   the Third-Amended Complaint is DENIED. (ECF No. 155.)
27   ///
28   ///

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Law

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of a factual dispute, the opposing party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, the fact might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7

1  trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is
2  to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
3  trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) Advisory Committee
4  Notes (1963)).

5        In resolving a summary judgment motion, the court examines the pleadings, depositions,
6  answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed.
7  R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence
8  of the opposing party is to be believed and all reasonable inferences that may be drawn from the
9  facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.
10 at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
11 obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*
12 *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.
13 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party
14 "must do more than simply show that there is some metaphysical doubt as to the material facts."
15 *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead
16 a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at
17 587.

18       B.      <u>Analysis</u>

19       Defendant moves for summary judgment as to all claims against it. (ECF No. 143.) At
20 the outset, and as Defendant correctly points out, Plaintiff's opposition is fraught with procedural
21 deficiencies and is substantively insufficient. In particular, the Court notes Plaintiff fails to
22 comply with the requirement that he reproduce Defendant's statement of undisputed facts, admit
23 those facts that are undisputed, and deny those that are disputed.[2] *See* L.R. 260(b) (requiring
24 opposing party to "reproduce the itemized facts . . . and admit those facts that are undisputed and

---

[2] Plaintiff's opposition cites generally, without pin cites, to three groups of documents: (1) Plaintiff's SAC; (2) Plaintiff's handwritten notes; and (3) Plaintiff's deposition transcript, which is not attached as an exhibit. Because Plaintiff has failed to cite to or otherwise reference specific evidence, the Court declines to consider the documents. *Schneider v. TRW, Inc.*, 938 F.2d 986, 990 n.2 (9th Cir. 1991) (holding a "district court is under no obligation to mine the full record for issues of triable fact").

8

deny those that are undisputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"); *see also* Fed. R. Civ. P. 56(c), (e)(2)–(3). Rule 56(e) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion; [or] grant summary judgment if the motion and supporting materials--including the facts considered undisputed-- show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2)–(3). Accordingly, because Plaintiff failed to respond to any of Defendant's facts in its separate statement, the Court considers these facts to be undisputed.

However, "[c]onsidering some facts undisputed does not of itself allow summary judgment." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). Rather, "[o]nce the court has determined the set of facts—both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply—it must determine the legal consequences of these facts and permissible inferences from them." *Id.* (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). Thus, the Court considers each of Plaintiff's claims in turn.

       *i.*  *Gender Discrimination*

Defendant argues Plaintiff's claim for gender discrimination fails as a matter of law. (ECF No. 144 at 14–18.) Specifically, Defendant contends Plaintiff cannot show he suffered an adverse employment action because he received QA Supervisor training. (*Id.* at 15–16.) Defendant further contends to the extent Plaintiff could establish a prima facie case of gender discrimination based on the delay in his QA Supervisor Temp training, his claim would still fail because there were legitimate, nondiscriminatory reasons for the delay. (*Id.* at 16.) Finally, Defendant argues Plaintiff cannot demonstrate these legitimate, nondiscriminatory reasons are pretextual and has failed to identify any similarly situated comparators. (*Id.* at 18.)

In opposition, Plaintiff argues he has sufficiently and adequately plead facts to support his claim for gender discrimination. (ECF No. 146 at 2.) Plaintiff states, in a conclusory fashion,

that Plaintiff experienced adverse employment conduct. (*Id.* at 4.) Plaintiff also argues Defendant failed to provide an explanation as to why there was a delay in Plaintiff's training. (*Id.*) Finally, Defendant contends Plaintiff failed to prove that gender discrimination did not exist. (*Id.* at 5.)

For guidance on interpreting FEHA claims, California courts generally look to federal case law interpreting claims under Title VII of the Civil Rights Act of 1964. *Kohler v. Inter–Tel Techs.*, 244 F.3d 1167, 1172 (9th Cir.2001). California has adopted the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 801–04 (1973), in the employment context, including claims of discrimination based on a theory of disparate treatment under FEHA. *See Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354, (2000).

The *McDonnell Douglas* burden-shifting framework begins with the plaintiff making a prima facie case of sex discrimination. A plaintiff is required to meet the following four criteria in order to establish a prima facie case of sex discrimination: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably or circumstances surrounding the adverse employment action give rise to the inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. "While the plaintiff's prima facie burden is not onerous, he must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion." *Id.* at 355 (internal quotations and citations omitted); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 254.

The burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected or someone else was preferred, for a legitimate nondiscriminatory reason. *Id.* If the defendant so proves, the burden then shifts back to the plaintiff to establish that the employer's articulated reason was a "pretext" or a cover-up for

1   unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802–04. A plaintiff can show pretext
2   "by producing either direct evidence, such as clearly sexist, racist, or similarly discriminatory
3   statements or actions by the employer, or circumstantial evidence supporting an inference of
4   retaliatory or discriminatory motive, so long as such evidence is specific and substantial." *Munoz*
5   *v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) (internal citations and quotations omitted). While a
6   satisfactory evidentiary explanation by the employer for its actions destroys the legally mandatory
7   inference of discrimination arising from the plaintiff's prima facie case, the evidence and
8   inferences that properly can be drawn from the prima facie case may be considered in
9   determining whether the employer's explanation is pretextual. *See St. Mary's Honor Ctr. v.*
10  *Hicks*, 509 U.S. 502, 510–11 (1993).

11  Here, Plaintiff has failed to identify any evidence of gender discrimination from which a
12  prima facie case can be established. Instead, the undisputed evidence demonstrates that Plaintiff
13  received training for the QA Supervisor Temp position (ECF No. 145 at 6, 8), any delays in his
14  training were caused by Plaintiff's own career choices combined with business conditions outside
15  of Defendant's control (*Id.* at 9–12), and Plaintiff's performance during training indicated he was
16  not likely to become qualified for the position at the training's conclusion (*Id.* at 6–7). Plaintiff
17  does not dispute these facts. Nor does Plaintiff put forward any facts of his own to make a prima
18  facie showing of gender discrimination. Accordingly, the Court finds Plaintiff's claim for gender
19  discrimination fails as a matter of law.

20         ii.    *Failure to Accommodate and Engage in the Interactive Process*
21  Defendant argues summary judgment is warranted on Plaintiff's failure to accommodate
22  and failure to engage in the interactive process claims because Defendant engaged with Plaintiff
23  to identify an appropriate accommodation and has accommodated Plaintiff's work restrictions for
24  almost four years. (*Id.* at 18.) Defendant argues, despite Plaintiff's contention otherwise, it was
25  not obligated to place Plaintiff as a Bean Cook instead of a Topping Juice Helper. (*Id.* at 19–21.)
26  Finally, Defendant asserts Plaintiff's claim for failure to engage in the interactive process fails
27  because it is undisputed that Plaintiff requested and Defendant provided a reasonable
28  accommodation. (*Id.* at 21.)

Plaintiff's opposition improperly conflates distinct legal standards and makes conclusory assertions that the requisite elements for these claims have been satisfied. (ECF No. 146 at 6–8.) While Plaintiff's opposition is largely unintelligible, the Court understands Plaintiff's arguments to be that triable issues of fact exist as to whether the accommodation Plaintiff requested was reasonable and whether Defendant engaged in the interactive process. (*Id.*)

The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with a reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 373 (2015). To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred. *Scotch v. Art Institute of California*, 173 Cal. App. 4th 986, 1018 (2009).

Here, Defendant has presented undisputed evidence that it provided accommodations for Plaintiff's known limitations for years. For example, in September 2018, Defendant evaluated whether Plaintiff's restrictions could be accommodated by assessing the essential job functions of various roles for which he was qualified, including the Maintenance Helper positions, the Bean Cook position, and the Can Run Attendant position. (ECF No. 145 at 14.) After Plaintiff returned to work in June 2019, Defendant sought a long-term position to continue accommodating Plaintiff's known work restrictions. (*Id.* at 16.) Finally, in August 2019, after Plaintiff alleged he was injured at work and was diagnosed with two herniated discs, Defendant provided Plaintiff with additional accommodations by placing him on an approved medical leave of absence. (*Id.* at 18.) Plaintiff provides no specific details or evidence of Defendant's failure to consider any reasonable accommodation or of a communication to Defendant regarding a reasonable accommodation that Plaintiff was aware of but was not provided. Plaintiff's bare assertions that Defendant failed to provide a reasonable accommodation or engage in the interactive process does not create a triable issue of fact.

Accordingly, the Court finds Plaintiff's claims for failure to provide a reasonable accommodation or engage in the interactive process fail as a matter of law.

### iii.  Retaliation

Defendant argues Plaintiff's retaliation claim fails because Plaintiff's transfer to the Juice Topper Position was part of the reasonable accommodation process and had nothing to do with retaliation. (ECF No. 144 at 22.) Defendant further argues there is no causal link between Plaintiff's complaints of harassment and the transfer to the Juice Topper position, or alternatively, Defendant has asserted a legitimate, nonretaliatory reason for the transfer. (*Id.* at 23.) Plaintiff fails to address Defendant's arguments or the retaliation claim in his opposition.

On a motion for summary judgment, the plaintiff's failure to address the defendant's arguments regarding a claim serves as the plaintiff abandoning that claim. *Est. of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011) (affirming summary judgment on a claim because the plaintiff "abandoned th[e] claim by failing to raise it in opposition to the [defendant's] motion for complete summary judgment"); *see also Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (quoting *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("We have previously held that a plaintiff has 'abandoned ... claims by not raising them in opposition to [the defendant's] motion for summary judgment.'")

Accordingly, the Court finds Plaintiff has abandoned his retaliation claim by failing to oppose Defendant's motion to dismiss it.

In sum, the Court finds Plaintiff's claims for gender discrimination, failure to provide a reasonable accommodation, and failure to engage in the interactive process fail as a matter of law. The Court also finds Plaintiff has abandoned his retaliation claim. Thus, the Court GRANTS Defendant's Motion for Summary Judgment in its entirety.

//
//
//
//
//
//
//

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Leave to Amend (ECF No. 155) and GRANTS Defendant's Motion for Summary Judgment (ECF No. 143) in its entirety. The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Date: September 9, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE